DA 07-0343

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 47

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

WILBERT FISH, JR.

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2005-145
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Patrick F. Flaherty, Attorney at Law, Great Falls, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General, J. Stuart Segrest,
Assistant Attorney General, Helena, Montana

          Fred R. Van Valkenburg, Missoula County Attorney, Suzy Boylan,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  March 26, 2008

Decided:  February 24, 2009

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Wilbert Louis Fish, Jr., appeals from a judgment entered by the Fourth Judicial District Court, Missoula County, on his convictions of sexual intercourse without consent and tampering with a witness.  We affirm.

¶2     We restate the issues as follows:

¶3     1.  Was the District Court required to take judicial notice of evidence in Fish's prior, separate trial for sexual intercourse without consent?

¶4     2.   Did the prosecution withhold evidence with exculpatory or impeachment value?

¶5     3.  Was the evidence sufficient to convict Fish?

## BACKGROUND

¶6     Fish and the 16-year-old victim met one evening approximately a week before Halloween, 2005, while they were each "cruising" in vehicles on Higgins Avenue in Missoula, Montana.  Fish, who was then 23 years old, invited the victim and her friend to join him and his friend Donny Nikou at Fish's apartment.  The two girls went to the apartment briefly and, before they left, Fish and the victim exchanged cell phone numbers.

¶7     During the following week, Fish and the victim exchanged cell phone calls and text messages.  On Halloween night, the victim called Fish at around 8 p.m.  They agreed that he would pick her up at a convenience store and then take her to his apartment to watch a movie with another couple.  When Fish and the victim arrived at the apartment, however, no one else was there and they did not watch a movie.

2

¶8     Fish told the victim he wanted to show her something and took her into his bedroom. The room was dark and he forced her onto the bed. He held her down on the bed; kissed her neck, leaving two hickeys; pushed up her jersey and sports bra; and fondled and kissed her breasts and stomach. According to the victim, during this time, she protested, telling Fish "no," that she did not want to have sex. She then "froze" or "blacked out" from shock at what was happening to her. Fish removed her sweatpants, spandex shorts, and underwear and proceeded to penetrate her vagina with his fingers at least twice. The victim finally kneed Fish in the groin and pretended to have a phone call from her mother on her cell phone. Fish let her up and left the room. The victim dressed and left Fish's apartment.

¶9     The victim called her friend, who picked her up on a nearby street and persuaded her to tell her mother what had happened and report the incident to medical and legal authorities. Later that night, Fish sent the victim a text message on her cell phone explaining "I'm sorry cutie but u looked hot tonight" and asking her to call him.

¶10    During the police investigation of the victim's subsequent report to them, Fish persuaded his friend Jason Konye to tell investigators he was present in Fish's apartment on Halloween night when the victim was there, and that she and Fish cuddled on the couch but did not go into Fish's bedroom. Konye later retracted that statement, admitting he was not at Fish's apartment when the victim was there.

¶11    The state of Montana charged Fish with sexual intercourse without consent and tampering with a witness. These charges originally were added to an Information which had already been filed against Fish, charging him with sexual intercourse without consent

with another victim on another occasion, in a bar. The charges resulting from the two separate incidents later were severed, and separate trials were held.

¶12    In this case, Fish pled guilty to tampering with a witness. He does not appeal his conviction of that offense. He appeals from his conviction in a bench trial on the charge of sexual intercourse without consent.

### ISSUE 1

¶13    *Was the District Court required to take judicial notice of evidence in Fish's prior, separate trial for sexual intercourse without consent?*

¶14    In a trial which concluded before trial of this matter began, Fish was acquitted of the separate, severed charge of sexual intercourse without consent in the bar. Fish filed a motion in the present case asking the District Court to take judicial notice, pursuant to M. R. Evid. 202(b)(6), of testimony by two Missoula Police Department officers in the other trial. Fish contends the testimony establishes that the officers lied concerning the facts of that case. The District Court denied Fish's motion at the close of the evidence.

¶15    Fish argued to the District Court that the court should take judicial notice of the officers' testimony as a record of another court, pursuant to M. R. Evid. 202(b)(6). On appeal, however, he argues the District Court should have taken judicial notice of the testimony under M. R. Evid 201(b), as facts not subject to reasonable dispute. We limit our consideration of this issue to the claim Fish raised in District Court, under our longstanding rule that we will not consider an issue or argument not raised in the district court. *See State v. Ferguson*, 2005 MT 343, ¶ 38, 330 Mont. 103, 126 P.3d 463.

4

¶16 Judicial notice of court records, such as the record of the testimony at issue here, is discretionary. M. R. Evid. 202(c). Moreover, judicial notice is confined to matters which are relevant to the issues at hand. *State v. Ditton*, 2006 MT 235, ¶ 43, 333 Mont. 483, 144 P.3d 783.

¶17 Fish has not established that the testimony of the two police officers in his other trial was relevant to any issue in this trial. The investigative officers were different and the investigations of the two incidents did not overlap. Aside from Fish's status as the defendant in both cases, nothing has been presented which indicates the two cases are related in any way.

¶18 We hold the District Court did not abuse its discretion in refusing to take judicial notice of the testimony of the two police officers in Fish's prior, separate trial.

**ISSUE 2**

¶19 *Did the prosecution withhold evidence with exculpatory or impeachment value?*

¶20 The Due Process Clause of the United States Constitution requires a prosecutor to disclose all evidence favorable to the accused that is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). A *Brady* violation has three elements: (1) the evidence at issue was favorable to the accused, because it had either exculpatory or impeachment value, (2) the evidence was willfully or inadvertently suppressed by the State, and (3) the suppression resulted in prejudice to the accused. *Kills on Top v. State*, 2000 MT 340, ¶ 23, 303 Mont. 164, 15 P.3d 422.

¶21 Fish contends the State violated his *Brady* rights by failing to disclose that, during the second official statement the victim made to investigating officer Detective Jacobson,

5

she admitted being intoxicated on the first night she met Fish, about a week before Halloween. The defense states the first time it was made aware of this information was during the victim's direct testimony at trial. Fish argues the evidence was both exculpatory and incriminating.

¶22 We disagree. Fish has not established that evidence of the victim's intoxication on a night other than Halloween night has either exculpatory or impeachment value in this case. Exculpatory evidence is evidence that tends to justify, excuse, or clear the defendant from alleged fault or guilt. *Black's Law Dictionary* 566 (6th ed., West 1990). Evidence of the victim's intoxication a week before the crime does not affect, in any way, whether she consented to sexual intercourse with Fish on Halloween night. Further, the victim's intoxication during her first encounter with Fish is not useful for impeachment purposes, because she never denied drinking on the first night. The subject simply did not come up in every interview.

¶23 As a second line of argument under this issue, Fish contends the failure to disclose the victim's admitted intoxication a week before Halloween night was a violation of the State's continuing discovery obligation. He asks us to overturn his conviction as a sanction for this claimed discovery violation.

¶24 Fish did not request discovery sanctions from the District Court. Moreover, he has shown no prejudice from this claimed discovery violation. The victim testified at trial that she was drinking on the evening a week or so before Halloween when she first went to Fish's apartment, and Fish's counsel extensively cross-examined her on that subject. Under these circumstances, we decline to impose any discovery sanction.

6

¶25 We hold Fish has not established that the prosecution withheld evidence with exculpatory or impeachment value.

## ISSUE 3

¶26 *Was the evidence sufficient to convict Fish?*

¶27 We review a claim that the evidence is insufficient to support the verdict to determine whether, viewing the evidence in the light most favorable to the prosecution, any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Black,* 2003 MT 376, ¶ 29, 319 Mont. 154, 82 P.3d 926.

¶28 Fish contends on appeal, as he did at trial, that it would have been physically impossible for him to hold the victim down while taking off her pants and underpants. He also contends the victim's story was unbelievable because she testified she bruised easily, but no bruises (other than the hickeys) were identified on her body; because of the absence of evidence that Fish actually tore her spandex when he "ripped them off" her; because of her testimony that she "froze up" or "blacked out" during the incident; and because of her mother's involvement in the reporting of the incident. Finally, Fish contends the victim's story was unbelievable because she made inconsistent statements about whether she merely acceded to Fish's kisses or ever kissed him back, about whether she knew how she got the hickeys on her neck, and about whether Fish penetrated her vagina with his penis or his fingers.

¶29 It is not this Court's function on appeal to substitute its evaluation of the evidence for that of the district court. We defer to the district court's judgment on issues of witness credibility. *State v. Billman,* 2008 MT 326, ¶ 45, 346 Mont. 118, 194 P.3d 58.

7

Moreover, and ultimately, none of these matters raised by Fish is essential to determination of Fish's culpability for sexual intercourse without consent.

¶30     A conviction of sexual intercourse without consent is sustainable based entirely on the uncorroborated testimony of the victim. *State v. Whitcher*, 248 Mont. 183, 188, 810 P.2d 751, 754 (1991).   Here, the only element of sexual intercourse without consent which was in dispute was whether the victim consented to sexual intercourse.   Fish admitted penetrating the victim's vagina with his fingers, but contended his actions were consensual.  The victim testified she did not consent.

¶31     We conclude the evidence was sufficient to allow a rational finder of fact to find the essential elements of the offense of sexual intercourse without consent beyond a reasonable doubt.

¶32     Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS