Justice Beth Baker delivered the Opinion of the Court.
***238 ¶ 1 A Ravalli County jury convicted Patrick Terry Flowers of criminal possession of methamphetamine, criminal possession of marijuana, and two counts of criminal possession of drug paraphernalia after law enforcement found drugs and paraphernalia in his pickup truck during a traffic stop. Leslie Hill was the lone passenger in the vehicle at the time of the traffic stop. Flowers appeals his convictions, alleging that the District Court committed reversible error when it excluded evidence of Hill's plea agreement and curtailed his cross-examination of Hill. Flowers also claims his attorney was ineffective because he failed to request a jury instruction on accomplice testimony. We agree with Flowers that he was improperly denied the opportunity to impeach Hill. We therefore remand the case for a new trial.
PROCEDURAL AND FACTUAL BACKGROUND
¶ 2 During routine patrol near Stevensville, Montana, in December 2014, Deputy Jason Jones of the Ravalli County Sheriff's Office stopped a pickup that had an expired registration. Flowers was driving the vehicle and Hill sat in the front passenger seat. Deputy Jones asked for Flowers's driver's license and other documentation. After checking for active warrants for both Flowers and Hill, Deputy Jones informed Flowers that he was issuing him a warning for the expired tags. He asked Flowers to exit his pickup to show him the expired registration tags on the vehicle.
*183 ¶ 3 Once Flowers exited the vehicle, Deputy Jones returned Flowers's driver's license and documentation and told Flowers that he was free to go, but asked for consent to search the vehicle. Flowers consented and signed a consent form. Hill remained alone in the cab of the pickup during this interaction, but eventually got out and stood by a law enforcement vehicle during the search. Trooper Rocky Bailey and Sergeant Jesse Jessop were present for backup during the search. Before the search began, Flowers asked to get a sweatshirt from the back seat of the pickup. As Flowers retrieved the sweatshirt, a glass pipe fell out of the pickup cab onto the ground.
¶ 4 Deputy Jones recognized the pipe as the type of pipe used to smoke methamphetamine and placed Flowers under arrest. Laboratory ***239 tests later confirmed that the pipe had methamphetamine residue on it. After giving Flowers a Miranda warning, Deputy Jones asked Flowers who owned the pipe. Flowers replied that he did not know. When Deputy Jones asked whether the pipe belonged to Hill, Flowers stated that he did not think so.
¶ 5 While searching the truck, Deputy Jones found a plastic box containing a marijuana pipe and a bag with 6.65 grams of marijuana under the driver's seat. He also found a plastic container containing marijuana residue in the backseat. Hill consented to Deputy Jones's request to search her purse. Inside, he found a small glass vial with a white powdery substance in it, which laboratory tests later confirmed as methamphetamine.
¶ 6 Deputy Jones, Trooper Bailey, and Sergeant Jessop all testified that Flowers did not appear to be intoxicated during the stop, but that Hill appeared to be under the influence of methamphetamine or another drug because she was twitching and had jerky movements. Both Flowers and Hill were charged with criminal possession of methamphetamine, criminal possession of marijuana, and two counts of criminal possession of drug paraphernalia.
¶ 7 At the time of the December 2014 traffic stop, Hill already was facing serious drug charges from an incident in August 2014, including two charges of criminal possession of dangerous drugs with intent to distribute and criminal possession of drug paraphernalia. Hill's charges from the two incidents, along with the persistent felony offender ("PFO") status the State sought, carried a combined maximum penalty of 147 years of incarceration. Before Flowers's trial, Hill reached a plea agreement with the State to resolve all of her pending charges. The State agreed to amend her August 2014 charges to two charges of criminal possession of dangerous drugs and to dismiss the notice of intent to seek PFO status. Hill pleaded guilty to the two amended charges and to all the charges arising from the December 2014 traffic stop with Flowers. The State agreed to recommend that the court sentence Hill to five years for the August charges and an additional two years suspended for the December charges. The agreement provided that the trial court was not bound by the sentencing recommendation. The agreement did not require Hill to testify against Flowers. At the time of the trial, Hill was awaiting sentencing.
¶ 8 In its pretrial filings, the State notified Flowers that it intended to call Hill to testify against Flowers. In response, Flowers filed a pretrial notice that he intended to use evidence subject to M. R. Evid. 404(b), namely evidence of Hill's prior drug charges. He stated that he ***240 was not introducing the evidence to prove character, but "to prove motive, intent, opportunity, absence of mistake or accident, and the identity of the possessor of the contraband discovered in Mr. Flower's [sic] vehicle." He also filed a motion to take judicial notice of the charges against Hill and her subsequent guilty pleas. The State argued that if the court permitted Flowers to introduce evidence of the charges already pending against Hill at the time of the traffic stop, then the State should be permitted to address the Partner or Family Member Assault convictions for which Flowers was awaiting sentencing at the time of the traffic stop to give the jury the full context of Flowers's motivation, opportunity, or lack of accident that night. The District Court excluded all evidence pertaining to Hill's prior charges, stating, "I'm not really inclined to *184 extensively get into the history of either party. I'd like to keep the focus on what occurred on the day of this arrest." The court permitted Flowers to cross-examine Hill about the portions of her plea agreement dealing with the December 2014 charges, but excluded all other questioning, and the plea agreement itself, under M. R. Evid. 404(b).
¶ 9 Hill testified that she and Flowers had been at a friend's house watching football earlier that evening and that Flowers was giving her a ride home. She testified that she was not under the influence of drugs or alcohol that night and that the drugs found in Flowers's pickup belonged to Flowers. She testified that she pleaded guilty to the charges arising from the December 2014 traffic stop because she knew that the drugs were in the pickup. When asked whether the State had given her favorable treatment in her plea agreement, she replied, "If you call seven years favorable treatment." When Flowers asked her whether the State had amended charges against her as part of her plea agreement, the District Court sustained the prosecutor's Rule 404(b) objection, ending that line of questioning.
¶ 10 The jury found Flowers guilty of all charges. The District Court sentenced him to ten years with five suspended.
STANDARDS OF REVIEW
¶ 11 We review evidentiary rulings-including a district court's ruling regarding the admissibility of evidence of other crimes, wrongs, or acts-for abuse of discretion. State v. Crider , 2014 MT 139, ¶ 14, 375 Mont. 187, 328 P.3d 612.
¶ 12 We exercise plenary review over issues of constitutional law. State v. Daniels , 2011 MT 278, ¶ 11, 362 Mont. 426, 265 P.3d 623. But we typically do not address issues raised for the first time on appeal, except in a narrow class of cases suitable for plain-error review.
***241 State v. Ritesman , 2018 MT 55, ¶ 12, 390 Mont. 399, 414 P.3d 261.
¶ 13 Claims of ineffective assistance of counsel present mixed questions of law and fact that this Court reviews de novo. State v. Root , 2015 MT 310, ¶ 8, 381 Mont. 314, 359 P.3d 1088.
DISCUSSION
¶ 14 1. Whether the District Court abused its discretion by excluding evidence of Hill's plea agreement.
¶ 15 Flowers argues that the District Court abused its discretion when it excluded evidence of Hill's plea agreement and prior drug charges under M. R. Evid. 404(b) and prevented Flowers from fully cross-examining Hill about her plea agreement. He argues that he was not relying on the evidence to show Hill's criminal disposition, but rather to demonstrate Hill's motive to testify falsely, to show the identity of the owner of the contraband, and to impeach Hill's testimony that she did not receive a favorable deal from the State. He argues that these uses are permissible under M. R. Evid. 404(b). Alternatively, Flowers argues that this Court should exercise plain-error review, because-although he did not object on this ground-the exclusion of the evidence prevented him from defending himself and violated his Confrontation Clause rights under the federal and state constitutions.
¶ 16 The State counters that the District Court did not abuse its discretion when it excluded evidence of Hill's prior drug charges under M. R. Evid. 404(b) ; the evidence easily could be used to imply that Hill possessed the drugs at issue here due to her criminal propensity. The State argues that Flowers did not articulate a chain of inferences before the District Court that established how this evidence was relevant for a permissible purpose and that Flowers therefore failed to preserve this argument for appeal. Further, the State argues that the evidence properly was excluded under M. R. Evid. 403, because getting into the criminal histories of Flowers and Hill would be a waste of time and confuse the jury with minimal probative value. Finally, the State argues that the District Court did not commit plain error or violate Flowers's constitutional rights in limiting the cross-examination of Hill because there is no evidence in the record that Hill received any benefit in exchange for her testimony and the District Court properly limited Flowers's cross-examination *185 to Hill's role in, and pleas arising from, the December traffic stop.
¶ 17 We reject the State's argument that Flowers failed to preserve his objection to the exclusion of the proffered evidence. Flowers filed notice of his intent to use Hill's plea agreement and prior drug charges "to prove motive, intent, opportunity, absence of mistake or accident, and ***242 the identity of the possessor of contraband discovered ... or any other purpose allowed by law and the Montana Rules of Evidence." He also filed a motion for the District Court to take judicial notice of the plea agreement and charges. The State did not file a responding brief, but the motions were argued in the final pretrial conference before the District Court. Flowers argued that because Hill resolved all of her pending charges in a global plea agreement, it was problematic to attempt to separate the incidents. This was especially true because she pleaded guilty to all charges arising from the December incident, but the State amended her earlier charges and dropped the PFO designation as part of the deal. Excluding evidence of the earlier charges thus would prevent Flowers from fully cross-examining Hill about any leniency she received from the State. Flowers also argued that the evidence showed intent, motive, and opportunity. We encourage the use of pretrial motions to preserve objections in cases where "a party may not wish to register an objection in the presence of the jury for tactical reasons, yet may wish to preserve the objection on appeal." Crider , ¶ 19 (internal quotations omitted). Flowers's pretrial filings preserved this issue for appeal, and we address the merits.
¶ 18 Flowers argued at trial that the drugs found in his pickup truck did not belong to him, but belonged to Hill, the only other occupant of the vehicle. He sought to introduce evidence of her pending charges and plea agreement to show that Hill was motivated to testify falsely in part because she received a favorable deal from the State. Hill's plea agreement resolved all the charges pending against her, including charges from an incident in August 2014. As part of the deal, the State reduced two charges from the prior incident and dropped its intention to seek PFO status. It left the four charges from the December incident unchanged. Allowing Flowers to question Hill only about her plea agreement as it pertained to the December 2014 charges thus gave the jury only a partial picture of the deal that the State struck with Hill.
¶ 19 Worse, Hill implied in her testimony that she had not received a favorable deal: when questioned about any favorable treatment in her plea agreement, Hill responded, "Favorable treatment? If you call seven years favorable treatment." When Flowers attempted to ask further questions to demonstrate any leniency Hill received, the District Court sustained the State's objection. But after Hill implied that she got no favorable treatment, her deal with the State was proper impeachment material. "[B]ias or motive of a witness to testify falsely is not a collateral issue because it bears directly on the issue of the defendant's guilt; thus, extrinsic evidence is admissible to prove that the witness has a motive to testify falsely."
***243 State v. Gommenginger , 242 Mont. 265, 272, 790 P.2d 455, 460 (1990). Hill's insistence that she had not gotten favorable treatment from the State went uncontradicted. The State exploited this in its closing argument when it stated that Hill had "taken responsibility for being in that truck with the Defendant that night," that she had "stepped up to the plate," and that she had "nothing to lose" because she already had pleaded guilty. Recall, however, that Hill had not yet been sentenced, and her plea agreement was not binding on the sentencing court. Although Hill's plea agreement did not require her to testify against Flowers, she arguably had reason to appear in a light favorable to the prosecution. The District Court rulings left Flowers unable to argue that Hill had gained a promise of leniency from the State, which may have motivated her to testify falsely.
¶ 20 The parties' arguments focus on whether Hill's plea agreement would inject impermissible other-crimes evidence in violation of M. R. Evid. 404(b). That rule prohibits evidence of other crimes, wrongs, or acts to show bad character or propensity to commit the charged offense.
*186 M. R. Evid. 404(b). Such evidence may, however, be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M. R. Evid. 404(b) ; State v. Stewart , 2012 MT 317, ¶ 61, 367 Mont. 503, 291 P.3d 1187. "The distinction between admissible and inadmissible Rule 404(b) evidence turns on the intended purpose of the evidence, not its substance." State v. Madplume , 2017 MT 40, ¶ 23, 386 Mont. 368, 390 P.3d 142. The trial court must ensure that any permissible use of evidence that could be barred under Rule 404(b) is "clearly justified and carefully limited." State v. Aakre , 2002 MT 101, ¶ 12, 309 Mont. 403, 46 P.3d 648.
¶ 21 Hill's plea agreement with the State was relevant to impeach her credibility and to show her motive for testifying against Flowers. Hill was the only other occupant of the vehicle when the drugs were found. Her testimony implied that she had come clean for her role without receiving anything in return, and it went uncontroverted. Her testimony was the only direct evidence that addressed Flowers's association with the drugs and drug paraphernalia found in the truck. Because of the court's ruling, Flowers was unable to impeach Hill with a possible motive to testify falsely on a matter that Flowers disputed-who owned the contraband found in his vehicle.
¶ 22 The trial court could have limited the evidence to ensure its permissible use and to minimize the potential for an improper propensity inference. The court could, for example, have precluded reference to the specific crimes with which Hill was charged in the ***244 August 2014 incident. But to prohibit any questioning to show that Hill had faced a potential 147-year sentence and got an agreement from the State for seven years with two suspended deprived Flowers of valuable impeachment evidence. See State v. Cunningham , 2018 MT 56, ¶ 26, 390 Mont. 408, 414 P.3d 289 ; see also Maier v. Wilson , 2017 MT 316, ¶ 43, 390 Mont. 43, 409 P.3d 878. Rule 404(b) did not bar its use.
¶ 23 We will reverse for evidentiary error only if the error prejudiced a defendant's substantial rights. See § 46-20-701(1), MCA. An error is prejudicial if a reasonable possibility exists that the exclusion of the challenged evidence contributed to the conviction. See State v. Van Kirk , 2001 MT 184, ¶ 47, 306 Mont. 215, 32 P.3d 735. The State does not argue harmless error in this case. We conclude that the error prejudiced Flowers and requires a new trial. Given this disposition, we need not address Flowers's Confrontation Clause claim.
¶ 24 2. Whether Flowers received ineffective assistance of counsel when his attorney failed to offer an accomplice instruction.
¶ 25 Flowers argues that because the outcome of the case turned on Hill's credibility, trial counsel should have requested an accomplice jury instruction. Such an instruction would have informed the jury that it should view Hill's testimony with distrust. Flowers argues that there was no justifiable reason not to request an instruction to distrust the testimony of an accomplice under § 26-1-303(4), MCA ; had trial counsel requested an accomplice instruction, the District Court would have been required to give it.
¶ 26 The State counters that Flowers's trial counsel was not ineffective because an accomplice instruction was inconsistent with his claim of innocence.
¶ 27 We evaluate claims of ineffective assistance of counsel under the test established in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Root , ¶¶ 11-12. The defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the defense. Root , ¶¶ 11-12. A strong presumption exists that the attorney's performance fell within the wide range of reasonable professional assistance. Root , ¶ 11.
¶ 28 Counsel is not ineffective for failing to request an accomplice instruction where such an instruction would be inconsistent with the theory of defense, such as a claim of innocence. Root , ¶ 15. Foregoing an accomplice instruction in such circumstances is a tactical decision. Root , ¶ 15. "In a case of an inconsistent defense, this Court on appeal *187 can determine from the face of the record that defense counsel made a ***245 'clear' tactical decision that does not constitute ineffective assistance." Root , ¶ 15 (internal citations omitted).
¶ 29 Flowers's defense theory was that he was innocent. His counsel argued that the contraband belonged to Hill and Flowers did not know it was in his vehicle. Flowers was simply giving a ride to a friend. Hill was the one who was high at the time of the traffic stop, and she was left alone in the pickup with plenty of time to take a pipe out of her purse and throw it in the back. Flowers's defense was not that Hill was legally accountable for his conduct or acted in concert with him, but that Hill was the only guilty party. An accomplice instruction would have been inconsistent with this defense of complete innocence. Counsel acted within the range of reasonable professional assistance in not requesting an accomplice instruction, and his performance did not fall below an objective standard of reasonableness.
CONCLUSION
¶ 30 The judgment is reversed, and the case is remanded for a new trial.
We Concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
LAURIE McKINNON, J.
INGRID GUSTAFSON, J.
JIM RICE, J.