Justice Beth Baker delivered the Opinion of the Court.
***215 ¶ 1 A jury found Michael Lee Clemans guilty of one count of sexual intercourse without consent in violation of § 45-5-503(1), MCA. Clemans argues on appeal that the District Court deprived him of a fair trial when it allowed the victim's mother to provide testimony about Clemans's prior assault against the victim's brother and when it sent the victim's forensic interview video into the jury room during deliberations. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶ 2 In July 2014, sixteen-year-old A.P. confided in her mother, Hester, that her step-father, Clemans, had touched her inappropriately over the course of three nights when she was younger. A.P. made the disclosure as she and Hester drove in their car to the home they shared with Clemans; Clemans followed them in a separate car. A.P. begged Hester not to tell Clemans she had disclosed the abuse, and Hester agreed; they returned home with Clemans and did not speak to him about the disclosure. A.P. stayed in the home *1212 that night, then left to stay at a friend's house. Hester contacted law enforcement about A.P.'s disclosure soon after, when she reviewed text messages that A.P. and a friend previously sent one another regarding the abuse. Hester then also left the home with her youngest child and went to stay with a friend. In late July, a trained forensic interviewer interviewed A.P. about the sexual assaults and made a video recording of the interview. During the interview, A.P. described digital penetration by Clemans that had taken place on three separate nights approximately four years prior to her disclosure. The State charged Clemans with three counts of sexual intercourse without consent, one for each night.
¶ 3 The First Judicial District Court conducted a jury trial on the charges in August 2016. Both A.P. and Hester testified for the State. Clemans testified for the defense. The jury also viewed a video recording of A.P.'s July 2014 forensic interview. The jury found Clemans not guilty of Count I, undecided as to Count II, and guilty of ***216 Count III. The District Court sentenced Clemans to the Montana State Prison for one hundred years, with ninety-two years suspended.
STANDARDS OF REVIEW
¶ 4 We review evidentiary rulings for abuse of discretion. State v. Flowers, 2018 MT 96, ¶ 11, 391 Mont. 237, 416 P.3d 180. We discretionarily may review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection was made, under plain error review. State v. Lackman, 2017 MT 127, ¶ 9, 387 Mont. 459, 395 P.3d 477. We review ineffective assistance of counsel claims de novo. Flowers, ¶ 13.
DISCUSSION
¶ 5 Issue One: Whether the District Court abused its discretion when it admitted testimony about Clemans's assault against the victim's brother.
¶ 6 The first morning of trial, the defense requested that the District Court prohibit the State from eliciting testimony about Clemans's violence in the home and about Clemans's assault and related conviction against A.P.'s oldest brother in 2013. The District Court declined to make a ruling on the request at that time and told defense counsel to object at trial.
¶ 7 Hester testified for the prosecution that "some tension" and fighting existed between Clemans and A.P.'s brother, that the brother had moved out of the house, and that there were arguments between Clemans and the other children. Clemans did not object to this testimony. When asked to talk about the circumstances surrounding A.P.'s disclosure that Clemans had touched her, Hester stated that A.P. "was afraid of him," was in tears when she made the disclosure, and "begged me not to say anything to him." Clemans's counsel cross-examined Hester about A.P.'s fear of Clemans and questioned why Hester and A.P. had returned to the home rather than leave immediately. The defense's questions referred to whether A.P. had expressed fear of Clemans around the time of the touching or since, why she did not leave the house, and why Hester and A.P. went back to the house rather than leave immediately after A.P.'s disclosure.
¶ 8 The next day, out of the presence of the jury, the State argued to the District Court that Clemans's cross-examination of Hester opened the door to testimony about Clemans's 2013 assault against the brother to explain Hester's and A.P.'s fear of Clemans and the reasons they did not immediately leave the home after A.P.'s disclosure. Clemans ***217 objected, arguing that such testimony was impermissible character evidence. The District Court agreed that Clemans had opened the door to rebuttal testimony from Hester. Clemans's attorneys later reiterated his objection to the testimony, but chose not to request the District Court to give the jury a cautionary instruction, stating they believed that such an instruction "would call more attention than necessary" to it.
¶ 9 Clemans argues that the District Court erred when it allowed Hester to testify about Clemans's 2013 assault against A.P.'s brother. Clemans maintains that the State offered this testimony to show his character as a "mean and violent" man contrary to M. R. Evid. 404. The State argues that Clemans opened the door through its cross-examination of Hester by inferring that A.P. was not *1213 afraid of Clemans and Hester did not believe returning home was unsafe.
¶ 10 The Montana Rules of Evidence generally prohibit evidence of a person's character, including evidence of other bad acts, to prove the person's actions at issue in the case. M. R. Evid. 404(a) and (b). But "[w]hen one party opens the door, or broaches a certain topic that would otherwise be off limits, 'the opposing party has the right to offer evidence in rebuttal, including evidence of other acts.' " State v. Guill, 2010 MT 69, ¶ 39, 355 Mont. 490, 228 P.3d 1152 (quoting State v. Veis, 1998 MT 162, ¶ 18, 289 Mont. 450, 962 P.2d 1153 ). In Guill, the defendant suggested in opening statement that his wife was unfaithful and was "instrumental in fabricating the allegations" of child sexual abuse against the defendant for financial gain. Guill , ¶ 40. We held that by raising the issue of his wife's credibility or bias, the defendant opened the door to evidence about the defendant and his wife's relationship to rebut that impression. See Guill , ¶ 40.
¶ 11 The intended purpose of the evidence, not the substance, is what differentiates admissible from inadmissible evidence under M. R. Evid. 404(b). Flowers , ¶ 20 (citing State v. Madplume, 2017 MT 40, ¶ 23, 386 Mont. 368, 390 P.3d 142 ). The "trial court must ensure that any permissible use of evidence that could be barred under Rule 404(b) is 'clearly justified and carefully limited.' " Flowers , ¶ 20 (quoting State v. Aakre, 2002 MT 101, ¶ 12, 309 Mont. 403, 46 P.3d 648 ). Evidence of a defendant's other acts is "a permissible purpose under Rule 404(b)" when offered to demonstrate another person's "state of mind that caused her to act as she did." State v. Ankeny, 2018 MT 91, ¶ 38, 391 Mont. 176, 417 P.3d 275.
¶ 12 Here, Hester provided uncontested testimony on direct examination about Clemans's violence toward his family and A.P.'s fear of Clemans. Clemans elicited more detail on cross-examination, ***218 delving deeper into Clemans's alleged violence, A.P.'s fear, and the reasons why Hester returned home with A.P. Clemans's attorney pursued a line of questioning about Hester's return to the home after A.P.'s disclosure, asking if A.P.'s fear of Clemans at the time of her disclosure came "out of the blue." Hester testified, "She's always been afraid of him. For a long time. For many years, many years. He would be very abusive." Later, Clemans's attorney again referred to why Hester went home with A.P. after A.P.'s disclosure. Hester testified that she "had to. For our safety and for Mike's temperament, I felt it was safe for us to go back to where I actually had an opportunity to go." Upon further questioning, Hester explained, "I had to do what I had to do to make sure everything is still normal, that he felt everything was normal, so we could leave and it was safe for us to leave."
¶ 13 Prior to the State's redirect, the District Court ruled that it could ask Hester why she needed a plan before she and A.P. left the home, which if necessary would include testimony that Clemans had assaulted A.P.'s brother; the court disallowed testimony about Clemans's conviction of the assault. Upon Clemans's argument that allowing evidence of the brother's blackened eye went too far, the District Court responded, "Look, what Hester is explaining is the issue that you raised of why she didn't just drive away. I am going to let her explain that."
¶ 14 Hester testified on redirect examination that after A.P.'s disclosure to her, she returned home to put a plan together to leave safely. Hester testified that in 2013 Clemans punched the brother in the face, giving him a black eye, and the brother moved out of the family home after this incident.
¶ 15 The record demonstrates that Clemans questioned Hester's return home after A.P.'s disclosure to cast doubt on the veracity of A.P.'s allegations. Defense counsel, as the District Court stated, "waded in and kept on going" by inferring through cross-examination that A.P. was not afraid of Clemans and Hester did not believe it was unsafe to return to the home. Clemans opened the door for the State to "[present] evidence to explain the relationship" and to correct a misimpression of why Hester did not immediately leave the house with A.P. Guill, ¶ 40. The District Court limited Hester's redirect testimony, and Clemans chose not to have the court give the jury a cautionary instruction. We conclude that the District Court did not abuse its discretion.
*1214 ¶ 16 Issue Two: Whether the District Court committed plain error by allowing the jury unrestricted access to A.P.'s forensic interview video in the jury room during deliberation, or whether trial counsel was ***219 ineffective for failing to object.
¶ 17 A.P. testified about her recollection of the inappropriate touching and about statements she made during the forensic interview. A.P.'s trial testimony described certain digital penetration only on the third night; in contrast, A.P. told the forensic interviewer that Clemans had digitally penetrated her on all three nights. Over Clemans's objection, the District Court admitted both the forensic interview video and the video transcript into evidence. Clemans does not challenge this ruling on appeal. The District Court allowed the State to play the video to the jury and to provide the jury with copies of the video transcript to follow along as the video was shown. Upon the State's request, the District Court allowed the video to accompany the other evidence into the jury room during deliberations; Clemans did not object. The transcripts did not go to the jury room.
¶ 18 Clemans argues that the District Court compromised his right to a fair trial when it sent the video of A.P.'s forensic interview to the jury room during deliberations. He urges the Court to order a new trial for plain error or for ineffective assistance of counsel.
¶ 19 Section 46-16-504, MCA, addresses the items that may be taken into the jury room by the jury during deliberation, including "all exhibits that have been received as evidence." But even though a video interview may be part of the evidence, allowing juries to hear testimonial evidence while they deliberate can unduly emphasize the testimonial evidence to the exclusion of other testimony. See State v. Bales, 1999 MT 334, ¶¶ 20-23, 297 Mont. 402, 994 P.2d 17.
¶ 20 We discretionarily may review claimed errors not objected to at trial that implicate a defendant's fundamental constitutional rights where the error may result in a manifest miscarriage of justice, may leave the question of fundamental fairness of the trial unsettled, or may compromise the judicial process's integrity. See State v. Finley, 276 Mont. 126, 137, 915 P.2d 208, 215 (1995). We review for plain error sparingly, on a case-by-case basis. Finley, 276 Mont. at 138, 915 P.2d at 215. "A mere assertion that constitutional rights are implicated or that failure to review the claimed error may result in a manifest miscarriage of justice is insufficient to implicate the plain error doctrine." State v. Gunderson, 2010 MT 166, ¶ 100, 357 Mont. 142, 237 P.3d 74 (quoting State v. Whipple, 2001 MT 16, ¶ 34, 304 Mont. 118, 19 P.3d 228 ). Clemans must "firmly convince" this Court of plain error. State v. Akers, 2017 MT 311, ¶ 10, 389 Mont. 531, 408 P.3d 142 (quoting State v. Favel, 2015 MT 336, ¶ 23, 381 Mont. 472, 362 P.3d 1126 ).
¶ 21 The record does not show and Clemans has not demonstrated that ***220 the jury room had equipment available for the jury to watch the video, that the jury requested equipment on which to watch the video, or that the jury watched the video. Clemans speculates that the State would not have requested that the video accompany the jury if the jury room was not equipped with means to watch it. The jury acquitted Clemans of one count and reached no decision on a second count despite A.P. having described during her interview that Clemans digitally penetrated her on all three nights. During the trial, A.P. testified to digital penetration having occurred on only the third night, which comprised the third count of sexual intercourse without consent. Count three was the only count on which Clemans was found guilty. Clemans has not convinced us that plain error review of his claim is warranted.
¶ 22 Clemans is guaranteed the right to effective trial counsel under the United States and Montana Constitutions. State v. Lehrkamp, 2017 MT 203, ¶ 25, 388 Mont. 295, 400 P.3d 697. To prove ineffective assistance of counsel he must show "(1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant." Lehrkamp, ¶ 25 (quoting McGarvey v. State , 2014 MT 189, ¶ 24, 375 Mont. 495, 329 P.3d 576 ); see Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). We may decide a claim of ineffective assistance of *1215 counsel on either ground. McGarvey, ¶ 24. To establish prejudice, Clemans must show a reasonable probability that, but for counsel's errors, "the result of the proceeding would have been different." Lehrkamp, ¶ 26 (quoting State v. Turnsplenty, 2003 MT 159, ¶ 14, 316 Mont. 275, 70 P.3d 1234 ).
¶ 23 Because the record does not suggest that the jury gave undue consideration to the contents of the video, Clemans has not demonstrated a reasonable probability that, but for counsel's failure to object to the video being sent to the jury room, "the result of the proceeding would have been different." Lehrkamp, ¶ 26.
CONCLUSION
¶ 24 The judgment is affirmed.
We concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
JAMES JEREMIAH SHEA, J.