FILED

12/30/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0343

DA 24-0343

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 302

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

LILA LYNN LORD,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DC-23-78
Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        Jacquelyn M. Hughes, Hughes Law, P.L.L.C., Billings, Montana

     For Appellee:

        Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

        Charity McLarty, Richland County Attorney, Sidney, Montana

        Submitted on Briefs:  October 8, 2025

               Decided:  December 30, 2025

Filed:

                        _____
                            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Lila Lord (Lord) appeals her conviction for Tampering with Evidence following a jury trial in the Seventh Judicial District Court, Richland County. We affirm Lord's conviction, addressing the following issues:

1. *Did the District Court err by denying Defendant's proposed accomplice instruction?*

2. *Did the District Court err by denying Defendant's request for a witness to testify by video?*

3. *Did the District Court err by denying Defendant's directed verdict motion based on insufficient corroboration of an accomplice's testimony?[1]*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On February 24, 2023, Marie Chris Entzel (Entzel) staged a burglary at her home in Sidney, Montana. Entzel's life was in chaos, and she was desperate to raise money to help pay for her son's attorney fees. Entzel thus conceived of a plan to stage the burglary and seek to collect insurance proceeds. She enlisted David Skaw (Skaw), and others, to take items from her house. During the staging, Entzel's house was damaged, and several high-value items were taken, including an enclosed trailer, a boat and boat trailer, refrigerator, pistol, and television. Entzel's husband was away during this time and unaware of Entzel's scheme. Upon returning home some time later, he called police, who initiated an investigation.

---

[1] In her arguments, Lord uses the common vernacular, "motion for directed verdict." Formally, "a motion for a directed verdict is properly deemed to be a motion to dismiss for insufficient evidence pursuant to § 46-16-403, MCA." *State v. Ohl*, 2022 MT 241, ¶ 5, n.1, 411 Mont. 52, 521 P.3d 759.

2

¶3 The State alleged that Entzel, Skaw, Lawrence Pohl (Pohl), Laurie McGregor, and Defendant Lord, among others, were involved in the staged burglary. The State initially charged Entzel by Information on August 11, 2023, with two counts of Conspiracy to Commit Criminal Insurance Fraud, Criminal Insurance Fraud by Accountability, Conspiracy to Commit False Reports to Law Enforcement Authorities, False Reports to Law Enforcement Authorities, and Conspiracy to Commit Tampering with or Fabricating Physical Evidence. On October 13, 2023, the State filed an Amended Information, reducing the charges against Entzel to one count of Criminal Insurance Fraud and one count of False Reports to Peace Officers. Notably for purposes of this appeal, Entzel was not charged or tried for Tampering with Evidence.

¶4 Lord and Skaw faced their own charges. In early February 2024, two weeks before Lord's trial, the State filed an Amended Information against Lord, charging her with one count of Conspiracy to Commit Insurance Fraud, in violation of § 33-1-1504, MCA, and § 45-4-102, MCA, for purposely and knowingly assisting Entzel to perpetrate the insurance scheme by disassembling and taking Entzel's refrigerator; and one count of Tampering with Evidence, in violation of § 45-7-207, MCA, for purposely and knowingly taking and hiding Entzel's refrigerator, as well as Entzel's boat and trailer, at Lord's residence in Plentywood, knowing that an official burglary investigation was ongoing or was about to be instituted.

¶5 Two days before trial, Lord moved the District Court to allow Pohl to testify remotely via Zoom because Pohl lived a significant distance from Sidney, near the

3

Idaho-Montana border. Lord proffered that Pohl would testify he gave Lord a ride to Plentywood from Entzel's house, and that he would provide a departure time that differed from the State's case. The prosecutor objected, arguing that the State received Pohl's phone number only 48 hours before trial and was unable to contact and identify him. The State had listed Pohl as a witness on its Information, with location "unknown." The District Court noted the request was untimely, and ruled that Pohl could testify, but only in person. Pohl did not testify.

¶6 The State called Entzel, Skaw, and Officer Norby to testify. Although Entzel and Skaw had both entered guilty pleas before Lord's trial, neither was compelled to testify as part of their plea agreements. Entzel testified that Skaw and Lord arrived together at Entzel's home on the evening on February 24, 2023, and met with her in the garage to discuss the plan to stage the burglary. She testified that, while Skaw hooked his truck to the boat trailer and towed the boat to his home, she walked Lord through the house to see if Lord wanted anything. Lord selected Entzel's French-door refrigerator, emptied its contents into plastic storage bins, and then disassembled the refrigerator. By the time Skaw had returned 1–2 hours later, Lord was done taking apart the refrigerator. Lord, Skaw, and Entzel loaded the refrigerator's doors into Lord's vehicle and the body of the refrigerator into Entzel's truck. Entzel testified that Lord was fully aware of the insurance fraud scheme, and claimed that, a day after the incident, Lord called Entzel to inform her that the boat had eventually been parked in Lord's garage and that Lord's boyfriend had slashed the boat trailer's tires in apparent jealousness over Lord's involvement with Skaw. On

4

cross-examination, Lord's counsel established that Entzel had lied to law enforcement and to insurance representatives multiple times about the circumstances.

¶7     Skaw testified that he had previously known Entzel, who contacted him to assist her in staging a burglary. Skaw said he saw Lord in Entzel's house during the evening of the staged burglary but didn't remember when Lord had arrived. Skaw explained that he had taken Entzel's boat in exchange for his help in the scheme, and that, at first, he had taken the boat to his house but moved it the following day to Lord's house in Plentywood. He said Lord observed him park the boat in her garage. Sometime later, he returned to winterize the boat but discovered the garage door half open and a screwdriver stabbed through one of the trailer's tires. Skaw, aware of the ongoing investigation and concerned that the boat could be seen in the garage, repaired the tire and towed the boat to a friend's house, where it was later found by police. Skaw said he helped load a freezer with its doors removed into the back of Entzel's truck, but that he had not further discussed a freezer or refrigerator with Lord. The refrigerator was never recovered. According to Skaw, Lord never stated anything to him that indicated she was aware of the insurance fraud scheme.

¶8     Corporal Norby and Lieutenant Zeiler interviewed Entzel, Skaw, and Lord during their investigation. The State published a portion of the officers' recorded interview with Lord to the jury, wherein Lord admitted she arrived at Entzel's home with Skaw on the evening of the incident. However, Lord unequivocally denied knowing anything about the insurance scheme then unfolding at Entzel's home. According to Lord, Entzel's house had already been robbed when she arrived and Entzel was in disarray. Lord claimed Entzel

5

had informed her that there was blood all over the walls inside of the house and that the house was a huge mess. Lord said she promptly called her daughter for a ride and left without entering Entzel's house. She further stated she was not aware that any of Entzel's property had ended up at her house. However, when Lieutenant Zeiler countered that police had seen Entzel's boat at Lord's house and knew that it was moved after its tire was repaired, Lord replied: "the boat got moved because . . . ." At that point the audio became garbled and the following words were indiscernible. Lord later claimed that she thought the boat belonged to Laurie McGregor.

¶9 After the State rested, Lord moved for a directed verdict on both counts, which the District Court denied. Lord called no witnesses and requested an accomplice instruction that advised that Entzel "may be legally accountable for the offenses charged in this case," and that her testimony "ought to be viewed with distrust." The District Court denied the request, stating:

> One of the issues that was left pending about jury instructions was the defendant's proposed or defendant's proposed instruction five on accountability, and I said well I would look through things again on- I would reserve ruling on whether that should be given or not, and I'm not going to give it because it's an instruction describing accountability, and in this case, while the original information included a charge based on accountability, and that was count three, which was criminal insurance fraud by accountability, in the amended information, that count was eliminated. So, I'm not going to give defendant's proposed exhibit- exhibit, instruction, excuse me, five, because I don't think it applies any longer, accountability.

¶10 The jury found Lord not guilty of conspiracy to commit insurance fraud, and guilty of tampering with evidence.

¶11 Lord appeals.

6

**STANDARD OF REVIEW**

¶12     The standard of review for jury instructions is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. King*, 2016 MT 323, ¶ 7, 385 Mont. 483, 385 P.3d 561 (citation omitted). A district court has broad discretion when it instructs the jury. *State v. Hall*, 2003 MT 253, ¶ 24, 317 Mont. 356, 77 P.3d 239 (citation omitted). Reversible error occurs when jury instructions prejudicially affect the defendant's substantial rights. *State v. Zlahn*, 2014 MT 224, ¶ 14, 376 Mont. 245, 332 P.3d 247 (citation omitted).

¶13     We review matters of trial administration for abuse of discretion. *State v. Rossbach*, 2022 MT 2, ¶ 9, 407 Mont. 55, 501 P.3d 914 (citation omitted). Abuse of discretion occurs if the district court acted arbitrarily and without employment of conscientious judgment or in a manner that exceeds the bounds of reason, resulting in substantial prejudice. *State v. Mercier*, 2021 MT 12, ¶ 12, 403 Mont. 34, 479 P.3d 967 (citation omitted).

¶14     A district court's denial of a motion for directed verdict is reviewed de novo. *State v. Marler*, 2008 MT 13, ¶ 20, 341 Mont. 120, 176 P.3d 1010 (citation omitted). A district court properly grants a motion for a directed verdict only when no evidence exists upon which a rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt, when viewing the evidence in a light most favorable to the prosecution. *Marler*, ¶ 20. We review questions regarding the sufficiency of corroborating evidence in the light most favorable to the prosecution. *State v. Torgerson*, 2008 MT 303, ¶ 25, 345 Mont. 532, 192 P.3d 695 (citation omitted).

**DISCUSSION**

¶15 *1. Did the District Court err by denying Defendant's proposed accomplice instruction?*

¶16 Lord's opening brief ties her argument on this issue to the Conspiracy to Commit Insurance Fraud charge, arguing she was entitled to the accomplice instruction because "Entzel was charged with, and pled guilty, to committing insurance fraud. She was, without question, an[] accomplice," and that when the state "prosecutes one person for the same crime for which the defendant is tried, it is an acknowledgment by the state that the person is an accomplice to the crime and that person becomes an accomplice as a matter of law," citing *State v. Rose*, 1998 MT 342, 292 Mont. 350, 972 P.2d 321. She argues the District Court erred by reasoning that because she was not charged with accountability for that offense, she was not entitled to the instruction. In response, the State concedes that Entzel was an accomplice to Lord "for purposes of the charge of conspiracy to commit insurance fraud," and that the accomplice instruction should have been given, but that, nonetheless, "the jury acquitted Lord of that charge." The State argues that, in contrast, the evidence demonstrated Entzel did not know that Lord, with Skaw's assistance, concealed the boat and trailer until after it had occurred, and thus, Entzel and Lord were not accomplices for purposes of the tampering charge. In reply, Lord pivots on this issue to the tampering charge, arguing that an accomplice instruction was required for that charge as well, and that the State's argument "that there is no factual evidence that Entzel was an accomplice is problematic given that the State charged Entzel with Tampering with Evidence by Accountability." Thus, because "the State charged Entzel for the same crime

8

and the charge was based on identical facts as the charge against Lord, Entzel was an accomplice as a matter of law."[2]

¶17 Section 45-2-302, MCA, provides that a person is legally accountable for the conduct of another when: "(1) causing the other person to commit the crime; (2) being accountable according to the statutory definition of the crime; and (3) soliciting, aiding, or abetting the crime before or during its commission." *State v. Tollie*, 2022 MT 59, ¶ 16, 408 Mont. 129, 506 P.3d 1021 (citing § 45-2-302, MCA). "Whether a witness for the prosecution is an accomplice is generally a question of fact, unless the fact is undisputed." *Rose*, ¶ 13 (citing *State v. Johnson*, 276 Mont. 447, 451, 918 P.2d 293, 295 (1996)). "However, the State's prosecution of one person for the same crime for which the defendant is tried constitutes an acknowledgment that the person is an accomplice to the crime." *Rose*, ¶ 13 (citing *Johnson*, 276 Mont. at 452, 918 P.2d at 296.) A district court is to instruct a jury "on all proper occasions" that "the testimony of a person legally accountable for the acts of the accused ought to be viewed with distrust." Section 26-1-303(4), MCA. We have explained that a "proper occasion" is when: "(1) an accomplice gives direct testimony; (2) the defendant requests such an instruction; and (3) the instruction is not inconsistent with the defendant's claim of innocence." *State v. Allen*, 2010 MT 214, ¶ 68, 357 Mont. 495, 241 P.3d 1045 (citing *Hall*, ¶ 30).

---

[2] Lord notes that the pleadings in *State v. Entzel*, No. DC-23-74 (Mont. Seventh Judicial Dist. filed Aug. 10, 2023) are not in the record of this case, but that the Court may take judicial notice of those filings for consideration on appeal. We have reviewed the filings in the *Entzel* matter and do take judicial notice of them. M. R. Evid. 202; *In re K.C.H.*, 2003 MT 125, ¶ 15, 316 Mont. 13, 68 P.3d 788.

¶18    In *Hall*, the defendant was convicted of both felony and misdemeanor theft for stealing camera equipment and a computer from his former employer, along with other small items and cash. *Hall*, ¶¶ 1, 10.  While police were arresting Hall at his house, Hall's roommate escorted an officer to Hall's bedroom to retrieve paperwork regarding another matter. *Hall*, ¶ 12.  While there, the officer saw the computer and some of the other stolen items, which were later seized pursuant to a search warrant. *Hall*, ¶¶ 12–13.  The roommate testified for the State. *Hall*, ¶ 26.  Hall, claiming innocence, requested an accomplice instruction arguing the roommate had stolen the items. *Hall*, ¶ 26.  The district court denied the instruction, stating:

> [I]f the defense is that Mr. Hall, the defendant here, did not do it, he was not there and is not culpable and not responsible, so be it. But then in such event, Mr. Nelson [the roommate] is not an accomplice, nor is he legally accountable within the meaning of the instruction.  He just did it.

*Hall*, ¶ 28. We affirmed the district court's ruling, stating, "[I]t is not proper to give an accountability instruction where it is not supported by the evidence and is inconsistent with the defendant's claim of innocence." *Hall*, ¶ 30.

¶19    In *Allen*, Allen was convicted of assault with a weapon and criminal endangerment. *Allen*, ¶ 1.  Golie, a confidential police informant, was present when Allen committed the offenses, helped police in their investigation, and testified for the State at trial. *Allen*, ¶¶ 7–8, 15.  Allen requested an accomplice instruction for Golie's testimony, and, in concluding he was entitled to it, we applied a three-part test:  "under § 26-1-303(4), MCA, it is error for a district court to fail to give an instruction on accomplice testimony when (1) an accomplice gives direct testimony, (2) the defendant requests such an instruction,

10

and (3) the instruction is not inconsistent with the defendant's claim of innocence." *Allen*, ¶ 68 (citing *Hall,* ¶ 30; *State v. Johnson,* 257 Mont. 157, 163, 848 P.2d 496, 499 (1993) *overruled on other grounds by City of Helena v. Frankforter*, 2018 MT 193, 392 Mont. 277, 423 P.3d 581). We reasoned that the instruction was "not inconsistent with Allen's claim of innocence" because, although Allen was charged with assault with a weapon, "Allen admitted [to the assault], but denied using a weapon." *Allen*, ¶ 71. Because Allen did not claim innocence and instead claimed he committed the assault but without the weapon, it was a proper occasion for the district court to provide the jury with an accomplice instruction. *Allen*, ¶¶ 70–72. We have generally so held in other cases. *See State v. Flowers*, 2018 MT 96, ¶ 28, 391 Mont. 237, 416 P.3d 180 ("Counsel is not ineffective for failing to request an accomplice instruction where such an instruction would be inconsistent with the theory of defense, such as a claim of innocence."); *State v. Charlo-Whitworth*, 2016 MT 157, ¶ 12, 384 Mont. 50, 373 P.3d 845 ("If the defendant claims at trial that he did not commit the acts for which he is being tried, he cannot then ask the court to instruct the jury that a testifying witness aided the defendant in the commission of those acts."); *State v. Ramirez*, 2025 MT 232, ¶ 29, 424 Mont. 326, 577 P.3d 1118 ("[Defendant] clearly offered a defense of innocence, and, as such, the [d]istrict [c]ourt did not err in denying the instruction."); *Johnson*, 257 Mont. at 163, 848 P.2d at 499 ("In his presentation the defendant contended he was not present at the scene of the crime. An accomplice instruction could be considered inconsistent with that defense.").

¶20 Turning to the two charges against Lord, the State concedes that Entzel was an accomplice to Lord for purposes of the charge of conspiracy to commit insurance fraud, and an accomplice instruction should have been given, as they were both charged with the same crime. *See Rose*, ¶ 13 ("[T]he State's prosecution of one person for the same crime for which the defendant is tried constitutes an acknowledgment that the person is an accomplice to the crime."). However, as the State also notes, Lord was acquitted of that charge and therefore was not prejudiced by the error. *See* § 46-20-701(2), MCA ("[a]ny error, defect, irregularity, or variance that does not affect [a defendant's] substantial rights must be disregarded"). Lord does not dispute this conclusion in her reply brief.

¶21 Regarding the tampering charge, Lord argues at length in her reply, as noted above, that "Entzel was an accomplice as a matter of law" because she was charged with tampering with evidence by accountability. However, while this charge against Entzel was included in the original Information, the State subsequently dropped the charge when filing the Amended Information, and Entzel was not tried for tampering with evidence or tampering with evidence by accountability. Consequently, nothing about the charges as ultimately filed and tried "constitute[d] an acknowledgment [by the State] that the person is an accomplice to the crime," *Rose*, ¶ 13, such that Entzel was an accomplice "as a matter of law."[3]

¶22 Applying *Allen*'s three-part definition of a "proper occasion" for an accomplice instruction, *Allen*, ¶ 68, Lord clearly claimed at trial that she was innocent of all

---

[3] Notably, the original Information charging Entzel with Tampering with Evidence by Accountability was premised upon her actions in coordination with Skaw, not Lord.

wrongdoing. Lord's trial counsel argued, "[Lord] was not aware of the Entzel's criminal- criminal [sic] scheme . . . [Entzel] concocted this scheme that got innocent people snared in it." Counsel further argued that Lord did not know Entzel's refrigerator and boat were being *concealed* on her property. Consequently, an instruction premised upon Entzel's role as an accomplice to Lord would have been inconsistent with Lord's defense. *Cf.*, *Allen*, ¶ 71 (request for accomplice instruction was proper because the defendant "admitted [to the assault], but denied using a weapon"). We therefore conclude that reversible error is not demonstrated by the District Court's denial of the accomplice instruction.[4]

¶23    *2. Did the District Court err by denying Defendant's request for a witness to testify by video?*

¶24    Two days before trial, Lord moved the District Court for leave for witness Lawrence Pohl to appear and testify by video, which was denied. Pohl was to offer testimony that he gave Lord a ride home from Entzel's house the night of the staged burglary and provide a timeline of when he and Lord departed Entzel's home. Lord contends that such testimony would "put in doubt the State's contention that [Lord] was there helping stage the burglary." Lord argues on appeal that the District Court denied Pohl's video appearance because "[t]he State could not be sure that the person appearing by telephone or Zoom, was in fact, [Pohl]," but the record seems to indicate that the District Court denied the request

---

[4] Entzel testified she was not sure where the refrigerator and boat went after they were taken from her property. Perhaps ironically, if the jury had been instructed to view her testimony in this regard with distrust, and arrived at the contrary conclusion that Entzel in fact knew the property had gone to Lord's place, the jury may have more easily found that Lord also knew it was Entzel's property, undermining her innocence theory that she believed the property belonged to Laurie McGregor.

because of the timing, stating, "[I]n light of the fact that he's late disclosed, he'll need to be here in person."

¶25 A district court exercises discretion over trial administration decisions, and we do not disturb those decisions absent an abuse of discretion. *Rossbach*, ¶ 20 (citation omitted); *see* M. R. Evid. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence."). Within 30 days after arraignment, or otherwise specified by a court, the defendant must provide the prosecution with a list of people whom the defendant may call as a witness during the defense's case in chief. Section 45-15-323(6)(a), MCA. The preferred method of introducing the testimony of a witness at trial is by way of the personal presence of the witness in the courtroom. *City of Missoula v. Duane*, 2015 MT 232, ¶ 25, 380 Mont. 290, 355 P.3d 729.

¶26 Section 45-15-323(6)(a), MCA, required Lord to disclose within 30 days of arraignment, or another time set by the District Court, all witnesses she planned to call during her case-in-chief. While the State had listed Pohl in the Information, it had done so with a designation of location "unknown." Lord requested Pohl's appearance two days before trial, and there is no dispute that the request was untimely. The District Court permitted Pohl to testify in person, and we see no basis to conclude it acted arbitrarily without conscientious judgment by denying the request to appear by video. Even so, Lord states the purpose of Pohl's testimony was to "put in doubt the State's contention that [Lord] was there helping stage the burglary." Pohl was expected to testify that he gave Lord a ride home from Entzel's house the night of the incident and provided a timeline for

14

their departure from Entzel's home, possibly supporting Lord's claim she was unaware of any conspiracy to stage a burglary for insurance fraud. However, as noted, because Lord was ultimately acquitted of the conspiracy to commit insurance fraud charge, she suffered no prejudice from Pohl's failure to testify. *See* § 46-20-701(2), MCA ("[a]ny error, defect, irregularity, or variance that does not affect [a defendant's] substantial rights must be disregarded").

¶27   *3. Did the District Court err by denying Defendant's directed verdict motion based on insufficient corroboration of an accomplice's testimony?*

¶28   Building on her prior argument that Entzel was an accomplice on the tampering charge, Lord contends the District Court erred by not dismissing the charges against her because Entzel's testimony was the only evidence against her and the State provided no corroboration of Entzel's testimony as required by § 46-16-213, MCA ("[a] person may not be found guilty of an offense on the testimony of one responsible or legally accountable for the same offense").

¶29   We have concluded above that Entzel and Lord were not accomplices for purposes of an accomplice instruction, given Lord's innocence defense, and as such, the State was not burdened to corroborate Entzel's testimony. In any event, however, based on our review of the record, we find there was sufficient evidence to support the District Court's denial, even if Entzel's testimony required corroboration. Entzel offered direct testimony that Lord arrived with Skaw, met in the garage with several people where the scheme was discussed, including that Skaw was going to take Entzel's boat and trailer, and walked Lord through the house to see if there was anything she wanted. Entzel testified that Lord

15

disassembled the refrigerator and helped load it into vehicles. Skaw testified that he took the boat in exchange for his help in facilitating Entzel's insurance fraud scheme, that Lord was in Entzel's house the evening of the incident, and that he helped load a freezer or refrigerator into a vehicle. Skaw also testified that Lord observed him park the boat in her garage and that he later fixed the trailer tire that Lord's boyfriend had damaged and moved the boat and trailer elsewhere. During Lord's police interview, Lord admitted she arrived at Entzel's home with Skaw on the evening of the incident. Further, when police officers informed Lord that Entzel's boat had been seen in her garage, Lord replied, "the boat got moved because . . ." before the audio recording became garbled; an exchange demonstrating that Lord was at least aware a boat had been placed in her garage. Construing the evidence in a light most favorable to the State, a rational jury could have found from this direct and circumstantial evidence that Lord had concealed or tampered with evidence, that is, Entzel's property, while knowing "that an official proceeding or investigation was about to be instituted."

¶30     Affirmed.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON

16