FILED

08/06/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0171

DA 22-0171

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 172N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHINA ROSE DAWN DAVIS,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 20-1672
Honorable Ashley Harada, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Deborah S. Smith, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Paul D. Vestal,
Christopher A. Morris, Deputy County Attorneys, Billings, Montana

Submitted on Briefs:  June 26, 2024

Decided:  August 6, 2024

Filed:

_____
               Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      China Rose Dawn Davis appeals from her September 17, 2021 conviction by a jury of the offense of Deliberate Homicide with a weapons enhancement occurring during the course of a felony pursuant to §§ 45-5-102(1)(b) and 46-18-221, MCA.  We affirm.

¶3      On the night of November 1, 2019, China convinced James Eder they should rob Carl Archer of three ounces of methamphetamine.  James was reluctant but agreed to China's plan.  James suggested bringing bear spray, but China convinced James to bring a gun, asking "what good is bear spray going to do?"  China and Carl traveled to multiple places through the night and early morning of November 1 and 2.  China continually messaged James telling him to rob Carl at these locations.  Eventually, China and Carl wound up at the Tiger Town Motel in Ballentine, Montana.  China told James where they were and asked when he was going to rob Carl.  James again told China he did not want to do it and to just come out so he can pick her up.  Instead, China lied and told James that Carl would not let her leave and was trying to rape her.  James came into the motel room with the gun and started screaming for Carl to let China go.  There was a struggle, and James shot Carl and ran away, leaving China behind.  Before leaving, China grabbed her

2

things, climbed over Carl's body, and went through his pockets to grab the methamphetamine. China did not call the police; rather, she tried to convince James to come back and pick her up.

¶4 About six months after Carl's death, China sent a message to a friend expressing her guilt and saying she was going to come clean with detectives in this case. China made a recorded confession to the police about what happened that night and her role in it. She discussed how her guilty conscious caused her to confess; how James never wanted to rob Carl and she had to encourage him multiple times to rob Carl; how she told James to bring a gun and manipulated him into thinking she was not safe with Carl; and how after James shot Carl and took off, China stole the methamphetamine from Carl's pockets and called James to come back and pick her up. James thereafter pleaded guilty to deliberate homicide and received a 60-year sentence. The State charged China with Deliberate Homicide occurring during a felony and added a weapons enhancement for the gun that was used to kill Carl. China went to trial and was convicted by a jury after a five-day trial.

¶5 At trial, the District Court admitted nine photographs over China's objection that showed Carl's body from various points within the motel room. At sentencing, the District Court sentenced China, without objection, to pay restitution in the amount of $9,945.67. The others involved in Carl's death had already been sentenced to pay the same amount in restitution jointly and severally. China now appeals the District Court's decision to admit the nine photographs and that the District Court did not sentence her to pay the restitution jointly and severally.

3

¶6    We review evidentiary rulings for abuse of discretion. *State v. Oliver*, 2022 MT 104, ¶ 18, 408 Mont. 519, 510 P.3d 1218.  A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds bounds of reason, resulting in substantial injustice. *Oliver*, ¶ 18.  We review a criminal sentence for legality only, confining our review to whether the sentence is within statutory parameters. *State v. Workman*, 2005 MT 22, ¶ 9, 326 Mont. 1, 107 P.3d 462.

¶7    China argues that the District Court abused its discretion in admitting nine crime-scene photographs which depicted Carl's body—in whole or in part—in the context of the rest of the crime scene.  Montana Rule of Evidence 403 allows a district court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."  District courts have broad discretion to weigh the relative probative value of evidence against the risk of unfair prejudice. *State v. Madplume*, 2017 MT 40, ¶ 32, 386 Mont. 368, 390 P.3d 142.  Rule 403 favors admission and evidence only rises to the level of unfair prejudice if it arouses the jury's hostility or sympathy for one side without regard to its probative value, if it confuses or misleads the jury, or if it unduly distracts from the main issues. *Madplume*, ¶ 33.  Even prejudicial or inflammatory photographs are admissible if they assist the jury in understanding the case. *State v. Sigler*, 210 Mont. 248, 256, 688 P.2d 749, 753 (1984), *overruled in part on other grounds by State v. Rothacher*, 272 Mont. 303, 310, 901 P.2d 82, 87 (1995).

¶8    Here, the District Court did not abuse its discretion in admitting the photographs. Initially, we note that potential jury members were asked during voir dire if they would

have a problem looking at graphic photos of this nature. None on the panel indicated they would.

¶9 Several of the challenged photographs only show parts of Carl's body from a distance, giving the rest of the crime scene context. These are not unfairly prejudicial as they are not likely to arouse the jury's hostility without regard to probative value. Nor were they likely to arouse the jurors' passions any more than the testimony and admissions about China's conduct that led to Carl's murder. *State v. Gollehon*, 262 Mont. 293, 302, 864 P.2d 1257, 1263 (1993) (holding that a trial need not be sanitized to the point that probative evidence must be excluded). They were helpful to the jury in understanding the crime and witness testimony regarding the events of the evening.

¶10 Nor did the District Court abuse its discretion in admitting the photographs that focused on Carl's body. The jury heard conflicting evidence at trial from James and China about the events of that evening, who the mastermind of the robbery was, and how a robbery turned into a homicide. The photographs tended to corroborate James' testimony and cast doubt on China's testimony. They accurately depicted the scene after James fled. Although standing next to the door, China decided to stay after Carl was shot, climb over his body, and rifle through his pants to retrieve the methamphetamine that was the purpose of the robbery. These photos were relevant to the prosecutor's theory of the case that China solicited, aided, or abetted the robbery instead of being another victim as she portrayed at trial.

5

¶11 The District Court did not abuse its broad discretion. *Gollehon*, 262 Mont. at 301–02, 864 P.2d at 1263. The photos were properly admitted into evidence to assist the jurors' understanding of the case.

¶12 In the alternative, China argues that she received an illegal sentence when the District Court imposed restitution to her individually and not jointly and severally with the two other people sentenced in relation to Carl's homicide.

¶13 The District Court had legal authority to require China to pay full restitution to the victims. *Workman*, ¶ 19; § 46-18-241(1), MCA. China agreed with the restitution amount at sentencing and did not object to the District Court's imposition of the full restitution. China had the ability to assert any defense during sentencing that she could have raised in a civil action—including joint and several liability. Section 46-18-244(2), MCA; *Workman*, ¶ 19. The District Court's sentence was objectionable, rather than illegal. We decline to review an unpreserved claim and put a district court in error for failing to address an argument not made before it.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶15 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE